IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAURICE A. WILKINS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-2450** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **TOM WOLF,** *et al.*, | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This matter is before the Court pursuant to Defendants' motion to dismiss (Doc. No. 23) *pro se* Plaintiff Maurice A. Wilkins ("Plaintiff")'s complaint (Doc. No. 1). Plaintiff filed his brief in opposition on April 7, 2021. (Doc. No. 28.) Upon review of the filings, the Court concludes that it is unnecessary to wait for Defendants' reply brief before ruling upon the motion to dismiss.

## I.   BACKGROUND

### A.   Summary of Plaintiff's Complaint

On December 28, 2020, Plaintiff, who is currently detained at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Tom Wolf ("Wolf"), John Wetzel ("Wetzel"), Kevin Kauffman ("Kauffman"), Jaime Stuller ("Stuller"), Anne Brown ("Brown"), and Craig Copper ("Copper"). (Doc. No. 1.) Plaintiff subsequently filed an amended complaint, adding C. Loy ("Loy") and Jill Spyker ("Spyker") as Defendants. (Doc. No. 12.)

In his amended complaint, Plaintiff takes issues with the measures taken in response to the COVID-19 pandemic. (Doc. No. 12.) He asserts that on March 29, 2020, the Department of Corrections ("DOC") imposed a statewide quarantine. (*Id.* at 3.) Plaintiff avers that he was working in the kitchen at this time and a fellow kitchen worker tested positive for COVID-19. (*Id.*) He claims that the staff members did not quarantine and instead continued to work without social distancing, placing him at high risk of exposure. (*Id.*) Plaintiff asserts that he put Defendants Wolf, Kauffman, and Wetzel on notice about these issues via mail. (*Id.*)

Plaintiff alleges that the "poor prison conditions" at SCI Huntingdon, including inadequate ventilation and filtration, have contributed to the spread of COVID-19. (*Id.*) He asserts that the "antique prison" has no windows and that the open bar cells allow the virus to "travel [rapidly]." (*Id.*) Plaintiff states that he was denied "the basic need of a shower and outdoor exercise for 2 weeks." (*Id.* at 4.) He maintains that he was not fed for three (3) days because the DOC has a policy that no special diets are to be provided during lockdowns, and Plaintiff has celiac disease and a corn allergy. (*Id.*) Plaintiff claims that in July of 2020, he was placed on "D max block" and his cell was "very humid with no air ventilation and unbearable heat causing severe anxiety, stress, and exhaustion." (*Id.*) He further avers that the restrictions imposed by Defendants Wolf and Wetzel have "infringed on [his] right to be able to worship in congregational prayer." (*Id.*) Plaintiff claims that the

restrictions have resulted in inadequate law library time and that he must "choose between the 1 day a week [of] yard or law library." (*Id.*) Plaintiff avers that the RHU "is getting recreation 1 hr a day and E & F block get it every other day compared to the 1 hr every 4 days [he gets] on B block." (*Id.*) Finally, Plaintiff avers that "incessant noise" from a fog machine disturbs his sleep almost every night from 2 to 4 a.m. (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights. (*Id.* at 5.) He seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*)

**B.   Summary of the DOC's Response to COVID-19**

The DOC has provided publicly available information regarding its response to the COVID-19 pandemic. *See COVID-19 and the DOC*, https://www.cor.pa.gov/PAges/COVID-19.aspx (last accessed Apr. 19, 2021 8:16 a.m.). In-person visitation has been suspended since March 13, 2020. *See id.* "All new inmates are being screened before being admitted into prison," and the DOC is not accepting inmates with flu-like symptoms from county institutions. *See id.* The DOC has provided inmates with disposable masks and "strongly encourage[s] inmates" to use them. *See id.* Moreover, inmates "are being provided materials to clean their cell[s] daily. Materials will be provided to them on a daily basis." *See id.* Institutions are conducting town hall meetings with inmates "to review sanitation

guidelines and COVID-19 information for awareness." *See id.* Correctional Industries has increased the production of anti-bacterial soap, and soap is provided free of charge to all inmates. *See id.* As of April 19, 2021, there are no active cases of COVID-19 at SCI Huntingdon. *Id.* There have been 310 inmate cases overall, with eight (8) deaths. *Id.* 1,992 inmates have been tested. *Id.* As of April 19, 2021, there is one (1) active staff case, with 189 cumulative staff cases. *Id.*

With respect to staff members, all facilities conduct "enhanced screening for all individuals entering a facility. No one will be permitted to enter a facility who has a fever over 100 degrees or exhibits signs of cold or flu." *See id.* Staff are required to wear masks, and "institutions have provided each staff member with a cloth mask for use." *See id.* Daily updates are provided to all staff members, and PPE has been provided to all staff. *See id.* Staff members have been given "a vehicle sanitation plan explaining how to clean all vehicles," and they have been directed to clean all equipment after each shift and throughout the day. *See id.*

Each institution "has plans in place for quarantine if an inmate tests positive." *See id.* All institutions have identified their vulnerable populations to keep them isolated. *See id.* All gyms, barber shops, and cosmetology areas have been closed until further notice, as have the general libraries. *See id.* Employees are advised to stay home if they are sick. *See id.* DOC officials have also reduced the inmate population where they can by furloughing paroled individuals from centers to home

plans, maximizing parole releases, expediting the release process for anyone with a pending home plan, and reviewing inmates who are beyond their minimum sentences. *See id.*

The DOC represents that medical staff have begun receiving their COVID-19 vaccines. *See id.* "Non-medical staff and inmates are in Phase 1B, with vulnerable inmates being prioritized." *See id.* All inmates will be offered the vaccine when it becomes available. *See id.* No one will be required to receive the vaccine, but the DOC will focus on "encouraging vaccination for those inmates in the long-term care setting who are most vulnerable." *See id.* Masks will continue to be worn even after vaccine distribution begins. *See id.*

The DOC's demobilization plan addresses various aspects of inmate life, including law library services, activities, unit activity, and religious activities. *See* https://www.cor.pa.gov/Documents/PA-DOC-COVID-Demobilization-Plan.pdf (last accessed Apr. 19, 2021 8:36 a.m.). At the most restrictive level, law library services are delivered to the housing unit, in-cell activities are permitted, and religious activities are delivered to housing units via broadcast. *See id.* At Level 4, the law library may open, and yard is permitted. *Id.* Religious services may resume "in chapel with cohort and social distance limitations" at Level 3. *See id.*

## II.   LEGAL STANDARD

### A.   Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a

complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).   A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

7

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## B.    Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was

committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.   DISCUSSION

### A.   Personal Involvement

Defendants Wolf, Wetzel, Kauffman, Walters, Spyker, Copper, and Loy assert that they should be dismissed from this matter for lack of personal involvement. (Doc. No. 24 at 5-9.) For a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Solan v. Ranck*, 326 F. App'x 97, 100 (3d Cir. 2009).

### 1.   Defendant Wolf

Plaintiff names Governor Wolf as a Defendant, noting that he was personally involved by ordering all state prisons to lockdown and impose restrictions because of the COVID-19 pandemic. (Doc. No. 12 at 1, 3-5.) Plaintiff's allegations, however, are insufficient to plead personal involvement. In *Rode*, the Third Circuit stated: "In a large state employing many thousands of employees, a contrary holding [concluding that the Governor has personal knowledge] would subject the Governor

to potential liability in any case in which an aggrieved [individual] merely transmitted a complaint to the Governor's office of administration or to the Lieutenant Governor's office." *Rode*, 845 F.2d at 1208; *see also Christian v. Garman*, No. 1:20-cv-1842, 2021 WL 1017251, at *3 (M.D. Pa. Mar. 17, 2021) (Governor dismissed where the inmate-plaintiff alleged that he was personally involved by ordering all state prisons to lockdown because of COVID-19); *Hampton v. Wetzel*, No. 1:15-cv-897, 2015 WL 2405062, at *2 (M.D. Pa. May 20, 2015) (Governor dismissed where the inmate-plaintiff "merely allege[d] that he sent letters to defendants Corbett and Wolf expressing his dissatisfaction with the DOC and the parole board"). The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's claims against Defendant Wolf.

### 2. DOC Defendants

Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *See Iqbal*, 556 U.S. at 676. The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to § 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the

consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'" *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).  With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."  *See Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Moreover, inmates do not have a constitutional right to prison grievance procedures.  *See Lions v. Wetzel*, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015).  The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation.  *See Pressley v. Beard*, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the

involvement of those officials and administrators in the underlying constitutional deprivation); *Ramos v. Pa. Dep't of Corr.*, No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate plaintiff's grievance does not state a constitutional claim), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *Rode*, 845 F.2d at 1207 (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action).

In his amended complaint, Plaintiff suggests that the events about which he complains were ongoing over the course of several motions.  While the review of grievances will not establish personal involvement in an underlying violation, several courts have concluded that a supervisory official may be held liable stemming from the review of a grievance alleging an ongoing violation because the official "is personally involved in that violation because he is confronted with a

situation he can remedy directly." *Mayo v. Oppman*, No. CV 17-311, 2018 WL 1833348, at *4 (W.D. Pa. Jan. 23, 2018), *report and recommendation adopted*, 2018 WL 943528 (W.D. Pa. Feb. 20, 2018); *Gibbs v. Univ. Corr. Healthcare*, No. CV 14-7138, 2016 WL 6595916, at *2 (D.N.J. Nov. 7, 2016); *Whitehead v. Rozum*, No. 11-102, 2012 WL 4378193, at *2 (W.D. Pa. Aug. 7, 2012). Viewing the complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff presented Defendants Wetzel, Kauffman, Walters, Spyker, Copper, and Loy with grievances intended to correct alleged ongoing violations. Thus, the Court declines to dismiss Plaintiff's claims against these Defendants on the basis that they lacked personal involvement. *See Bevins v. Kauffman*, No. 1:20-cv-2012, 2021 WL 322168, at *4 (M.D. Pa. Feb. 1, 2021) (declining to find lack of personal involvement in matter where the inmate-plaintiff was alleging Eighth Amendment violations based upon the COVID-19 pandemic).

### B.   First Amendment Claims

#### 1.   Access to the Courts

It is well-settled that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). "In order to state a claim of the denial of access to the courts, a prisoner such as [Plaintiff] must allege that his efforts to pursue a legal claim were hindered and he suffered an actual injury." *Ross v. Clerk of Courts of Court of Common Pleas of Philadelphia*, 726 F. App'x 864,

865 (3d Cir. 2018) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).  "[P]risoners

may only proceed on access-to-courts claims in two types of cases, challenges (direct

or collateral) to their sentences and conditions of confinement."  *Monroe v. Beard*,

536 F.3d 198, 205 (3d Cir. 2008).  A complaint raising an access to the courts claim

"must describe the underlying claim well enough to show that it is 'more than mere

hope,' and it must describe the 'lost remedy.'"  *Christopher v. Harbury*, 536 U.S.

403, 416-18 (2002).

In his amended complaint, Plaintiff avers that the restrictions imposed by

Defendants in response to the COVID-19 pandemic has resulted in inadequate law

library time.  His amended complaint, however, fails to allege any facts concerning

the merits of any underlying civil claims that he wished to pursue, let alone allege

that he suffered an actual injury because of the reduced law library access.  *See*

*Presbury v. Wetzel*, 789 F. App'x 294, 295 (3d Cir. 2020) (concluding same).

Rather, in his brief in opposition, Plaintiff suggests that his access to the courts has

been denied in connection with this matter.  (Doc. No. 28 at 8.)  The Court, however,

granted Plaintiff an extension of time to file his brief opposing Defendants' motion

to dismiss.  (Doc. Nos. 25, 26.)  The Court, therefore, will grant Defendants' motion

to dismiss with respect to Plaintiff's First Amendment access to the courts claim.

## 2. Free Exercise of Religion

The Supreme Court has recognized that the First Amendment guarantees that

all prisoners must be afforded reasonable opportunities to exercise their religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion."). However, in order to state a plausible claim, a plaintiff must allege a "substantial burden" on the exercise. *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981). Moreover, while inmates retain certain protections, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone*, 482 U.S. at 348 (quotations omitted).

In his amended complaint, Plaintiff alleges that the restrictions on in-person congregational worship violates his First Amendment rights. In his brief in opposition, he acknowledges that inmates have received video services, but argues that the video does not meet his obligation to have congregational prayer on Fridays. (Doc. No. 28 at 17.) Plaintiff has simply not plausibly alleged that his religious exercise has been substantially burdened by Defendants' actions due to the pandemic. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's First Amendment free exercise of religion claim.

### C.    Eighth Amendment Claims

### 1.    Conditions Related to COVID-19 Restrictions

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015).   "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." *See id.* at 347.   Such necessities include "adequate food, clothing, shelter, and medical care." *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).   Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).   However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304 and *Rhodes*, 452 U.S. at 347).

16

In the instant case, Defendants do note dispute that the COVID-19 pandemic constitutes a substantial risk of harm to inmates.  (Doc. No. 24 at 13); *see also Dixon v. United States*, No. 20-5994, 2020 WL 3249231, at *3 (D.N.J. June 16, 2020) (concluding that the inmate-plaintiff could meet the objective prong of an Eighth Amendment claim "because COVID-19 is a very contagious virus that can cause serious health complications or death in vulnerable people").  The Court, however, agrees with Defendants that Plaintiff has failed to allege facts suggesting that Defendants demonstrated deliberate indifference to the risk posed by COVID-19.  As noted *supra*, the DOC has adopted detailed preventative steps to mitigate the risk to inmates and staff and to control the spread of COVID-19 through the state correctional institutions.  The Court may take judicial notice of this information, as it is publicly available on a governmental website.  *See Vanderklok v. United States*, 868 F.3d 189, 205 (3d Cir. 2017).  "A review of these steps suggests that DOC officials, including Defendants, have not acted unreasonably with respect to the threat posed by COVID-19 and instead have instituted measures to safeguard the entire inmate population, including Plaintiff."  *Bevins*, 2021 WL 322168, at *5.

Plaintiff maintains that the limitations on access to the exercise yard violate the Eighth Amendment.  (Doc. No. 12.)  Plaintiff, however, has not alleged facts suggesting that the restrictions on recreation time imposed because of the COVID-19 pandemic have threatened his health and, therefore, has failed to state a

constitutional violation. *See Gattis v. Phelps*, 344 F. App'x 801, 805 (3d Cir. 2009) (determining that the prisoner was not guaranteed outdoor exercise at all times and that the limitation of exercise to three (3) days per week was insufficiently serious to implicate the Eighth Amendment); *see also Christian*, 2021 WL 1017251, at *7 (concluding that the inmate-plaintiff had failed to state a claim plausibly suggesting that the limitations on exercise implicated the Eighth Amendment).

Plaintiff also suggests that he was unable to shower for two (2) weeks at the beginning of the quarantine.  (Doc. No. 12.)  The Third Circuit, however, has concluded that denial of showers for fifteen (15) days did not violate the Eighth Amendment when the inmate-plaintiff did not "suffer[] any harm as a result of the denial of additional showers." *Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010).  Nothing in the amended complaint suggests that Plaintiff suffered any harm during this time period.  Moreover, nothing in the amended complaint suggests that Plaintiff was unable to use the running water in his cell to bathe.

While the Court understands Plaintiff's legitimate concerns regarding the COVID-19 pandemic, it agrees with the numerous courts throughout the nation that have concluded that similar allegations do not support a plausible inference that officials have demonstrated deliberate indifference to inmates' Eighth Amendment rights. *See, e.g., Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) (granting defendants' motion to stay the district court's grant of a preliminary injunction on

the basis that, *inter alia*, the plaintiffs had not demonstrated that defendants were deliberately indifferent to the risk posed by COVID-19 because the correctional facility had "implemented many measures to curb the spread of the virus"); *Bevins*, 2021 WL 322168, at *5; *Wylie v. Bonner*, No. 2:20-cv-2593-TLP-tmp, 2021 WL 261280, at *4-6 (W.D. Tenn. Jan. 26, 2021) (finding that inmate-plaintiff had failed to state an Eighth Amendment conditions of confinement claim because he failed to allege that staff knew of and disregarded the risks posed by COVID-19); *Shokr v. LeBlanc*, No. 20-488, 2020 WL 8093228, at * (M.D. La. Dec. 14, 2020) (concluding that the inmate-plaintiff had failed to state a plausible Eighth Amendment claim because measures were being taken to combat the COVID-19 virus); *Kesling v. Tewalt*, 476 F. Supp. 3d 1077, 1086-88 (D. Idaho 2020) (concluding that inmate-plaintiff's amended complaint failed to set forth a plausible Eighth Amendment claim when prison officials had developed and instituted policies to curb the spread of COVID-19); *McKissic v. Barr*, No. 1:20-cv-526, 2020 WL 3496432, at *6 (W.D. Mich. June 29, 2020) (concluding that inmate-plaintiff failed to state an Eighth Amendment claim where defendants had taken "significant measures . . . to secure prisoner safety and prevent infection" and the plaintiff's "speculation about the mere possibility that he will become infected does not rise to the level of an Eighth Amendment violation").   Indeed, "the Eighth Amendment does not require perfection on the part of prison officials." *See Wylie*, 2021 WL 261280, at *6. From

19

Plaintiff's amended complaint, as pled, the Court "cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, [Defendants] here acted unreasonably by 'doing their best.'" *See Swain v. Junior*, 961 F.3d 1276, 1289 (11th Cir. 2020). The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's claims concerning the lack of recreation and showers, as well as his claims concerning their alleged inadequate response to the COVID-19 pandemic.

### 2.   Cell Conditions

Plaintiff next alleges that in July of 2020, he was placed in a Plexiglas cell that was "very humid with no air ventilation and unbearable heat causing severe anxiety, stress, and exhaustion." (Doc. No. 12 at 4.) Nothing in the amended complaint, however, suggests that the named Defendants were personally involved in Plaintiff's placement in this cell. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's claim concerning conditions in this cell.

### 3.   Conditions Affecting Sleep

Plaintiff also avers that noise from a fog machine disrupts his sleep from 2 to 4 a.m. (*Id.*) He complained about the machine to Defendant Loy, and she informed him that it would continue to be used. (*Id.*) "High levels of noise are not per se Eighth Amendment violations; a violation requires a risk of injury, which can include psychological injury stemming from persistent noise and lack of sleep."

*Tineo v. Fed. Bureau of Prisons*, No. 19-cv-19403, 2021 WL 689144, at *3 (D.N.J. Feb. 23, 2021) (citing *Whitney v. Wetzel*, 649 F. App'x 123, 127 (3d Cir. 2016)). "A condition which might not ordinarily violate the Eighth Amendment may nonetheless do so if it persists over an extended period of time." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (concluding that an inmate's allegation regarding noise occurring every night, often all night, that interrupted or prevented sleep was sufficient to state an Eighth Amendment claim. Given Plaintiff's allegations, the Court concludes that he has set forth a sufficient Eighth Amendment claim against Defendant Loy regarding use of the fog machine. Defendants' motion to dismiss, therefore, will be denied with respect to this claim.

### 4.    Claims Regarding Medical Diet

Plaintiff maintains that he did not eat for three (3) days during a lockdown period in April of 2020 because the DOC "has a flawed policy that no special diets are given during lockdowns." (Doc. No. 12 at 4.) Plaintiff avers that he requires a medical diet for celiac disease and a corn allergy. (*Id.*) He alleges that for months, his meals have been nutritionally inadequate and that he has not received the proper calorie intake. (*Id.*) Plaintiff maintains that there are "months' worth of correspondence, grievances, and request slips about these issues," and that he raised his concerns numerous times with Defendants Copper, Brown, and Stuller. (*Id.*) The Eighth Amendment requires that inmates be provided a nutritionally adequate

diet.  *See Laufgas v. Speziale*, 263 F. App'x 192, 198 (3d Cir. 2008).   Given

Plaintiff's allegations, the Court concludes that he has set forth a plausible Eighth

Amendment claim regarding his medical diet against Defendants Copper, Brown,

and Stuller.  *See Edwards v. Duncan*, 355 F.2d 993, 994 (4th Cir. 1966) (concluding

that inmate-plaintiff stated a sufficient Eighth Amendment claim by alleging that he

was deprived of a special medical diet required for his heart condition).  The Court,

therefore, will deny Defendants' motion to dismiss with respect to this claim.

### D.    Fourteenth Amendment Claim

The Equal Protection Clause requires all persons "similarly situated" to be

treated alike by state actors.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S.

432, 439 (1985).   Traditionally, "[i]n order to establish a *prima facie* case of

discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that

they were members of a protected class [such as race or gender] and that they

received different treatment than that received by similarly-situated individuals."

*See Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002).  However,

where a plaintiff alleges that he alone "has been intentionally treated differently from

others similarly situated and that there is no rational basis for the difference in

treatment," he may raise a "class of one" equal protection claim.  *See Engquist v.

Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008).  To maintain such a claim, a plaintiff

must establish that he has been irrationally singled out for disparate treatment.  *See*

*id.* "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Mosca v. Cole*, 217 F. App'x 158, 164 (3d Cir. 2007). When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice. *See Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

In his amended complaint, Plaintiff vaguely suggests that his equal protection rights were violated because inmates from other housing units receive more recreation time than inmates on his block. (Doc. No. 12.) Plaintiff, however, has not pled any facts suggesting that Defendants have intentionally treated him differently from other similarly situated inmates. Rather, the exhibits attached to Plaintiff's amended complaint indicate that the accommodations on other housing blocks vary because of the DOC's response to COVID-19. (Doc. No. 12-2 at 5.) Plaintiff's allegations, at this time, amount to nothing more than conclusory language and bald assertions. *Young*, 160 F. App'x at 266. The Court, therefore,

will grant Defendants' motion to dismiss with respect to Plaintiff's Fourteenth Amendment equal protection claim.

### D.    Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.*  The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing discussion, the Court has concluded that the following claims survive dismissal: (1) his Eighth Amendment claim against Defendants Stuller, Brown, and Copper regarding his medical diet; and (2) his Eighth Amendment claim against Defendant Loy regarding the disruption of his sleep by

the fog machine.  The Court concludes that it would be futile to grant Plaintiff leave to file an amended complaint with respect to his claims against Defendant Wolf.  At this time, however, the Court cannot conclude that it would be futile to permit Plaintiff leave to file a second amended complaint regarding his remaining claims. Plaintiff is advised that the second amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The amended complaint should set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Each paragraph should be numbered.  It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts that he claims violated his rights.  Mere conclusory allegations will not set forth a cognizable claim. If Plaintiff fails to file an amended complaint, the above-captioned action will proceed only as to his Eighth Amendment claims against Defendants Stuller, Brown, Copper, and Loy.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss.  (Doc. No. 23.)  The motion will be denied with respect to Plaintiff's Eighth Amendment claims concerning his medical diet against Defendants Stuller, Brown, and Copper and his Eighth Amendment claim against

Defendant Loy concerning the disruption of his sleep by the fog machine. The motion will be granted as to all other claims for relief. Plaintiff will be granted leave to file a second amended complaint as to all dismissed claims except for his claims against Defendant Wolf. If Plaintiff does not file a second amended complaint, the above-captioned action will proceed only as to his Eighth Amendment claims against Defendants Stuller, Brown, Copper, and Loy. An appropriate Order follows.

<u>s/ Sylvia H. Rambo</u>
United States District Judge

Dated: April 22, 2021