## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAURICE A. WILKINS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-2450** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **TOM WOLF, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

This matter is before the Court pursuant to Defendants' partial motion to dismiss (Doc. No. 37) *pro se* Plaintiff Maurice A. Wilkins ("Plaintiff")'s second amended complaint (Doc. No. 36).

## I.   BACKGROUND

### A.   Procedural History and Summary of Plaintiff's Second Amended Complaint

On December 28, 2020, Plaintiff, who is currently detained at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Tom Wolf ("Wolf"), John Wetzel ("Wetzel"), Kevin Kauffman ("Kauffman"), Jaime Stuller ("Stuller"), Anne Brown ("Brown"), and Craig Copper ("Copper").  (Doc. No. 1.)  Plaintiff subsequently filed an amended complaint, adding C. Loy ("Loy") and Jill Spyker ("Spyker") as Defendants.  (Doc. No. 12.)

In his amended complaint, Plaintiff took issues with the measures taken by

the Department of Corrections ("DOC") in response to the COVID-19 pandemic. (Doc. No. 12.)  Plaintiff asserted violations of his First, Eighth, and Fourteenth Amendment rights as a result of these measures.  (*Id.* at 5.)  He sought declaratory and injunctive relief, as well as compensatory and punitive damages.  (*Id.*)

Defendants subsequently filed a motion to dismiss (Doc. No. 23), to which Plaintiff filed a response (Doc. No. 28).  In a Memorandum and Order dated April 22, 2021, the Court granted in part and denied in part the motion to dismiss.  (Doc. Nos. 32, 33.)  The Court denied the motion as to Plaintiff's Eighth Amendment claims regarding his medical diet against Defendants Stuller, Brown, and Copper and his Eighth Amendment claim concerning sleep disruption by the fog machine against Defendant Loy.  (*Id.*)  The Court dismissed Plaintiff's claims against Defendant Wolf with prejudice and dismissed all other claims without prejudice to Plaintiff's right to file a second amended complaint within thirty (30) days.  (*Id.*)

Plaintiff filed his second amended complaint on May 7, 2021, again taking issues with the various measures imposed by the DOC as a response to the COVID-19 pandemic.  (Doc. No. 36.)  Plaintiff avers that Defendant Wetzel's policies caused him to not be fed for three (3) days because "diets are suspended during lockdowns."  (*Id.* ¶ 12.)  He claims that Defendant Wetzel ignored guidance regarding transfers and quarantines, causing infection spikes.  (*Id.*)  Plaintiff also claims that the policies "overzealously restricted [his] recreation time, causing

significant weight increase that brought on obesity and borderline diabetes." (*Id.*) Plaintiff avers that Defendant Wetzel's restrictions infringed upon his "religious obligations of congregational prayers on Fridays as a Muslim." (*Id.*) Plaintiff claims that Defendant Wetzel is "well aware of the prison conditions" and the "1800s" design of SCI Huntingdon because he has toured the facility. (*Id.*)

Plaintiff avers that Defendant Kauffman is responsible for facility operations and was "on notice" that staff members were not wearing masks and failed to act. (*Id.* ¶ 13.) He also claims that ventilation and filtration has been an issue that has gone unfixed for decades. (*Id.*) Plaintiff maintains that Defendant Kauffman is also responsible for the restrictions infringing upon his religious rights and had knowledge about the diet issues and lack of recreation. (*Id.*)

Next, Plaintiff claims that Defendants Walters and Spyker knew about his diet issues because they were the initial grievance officers. (*Id.* ¶ 14.) Plaintiff avers that "they supported the violations against [him] with the inadequate diet and not being fed for 3 days." (*Id.*) He also argues that they are responsible for the lack of recreation and the "right to exercise religious practices obligated for Fridays in congregation." (*Id.*)

Plaintiff then avers that Defendant Loy knew that the fog machine used every night between 2:00 a.m. and 4 a.m. caused Plaintiff to experience sleep deprivation and disregarded the matter when Plaintiff complained to her. (*Id.* ¶ 15.) He also

maintains that Defendants Copper, Brown, and Stuller were deliberately indifferent to Plaintiff's diet issues.  (*Id.* ¶ 16.)  According to Plaintiff, he was given cold rice for breakfast for months and was not fed for three (3) days.  (*Id.*)  Plaintiff avers that he has celiac disease and corn allergies and that all Defendants have demonstrated deliberate indifference to such.  (*Id.*)

Based on the foregoing, Plaintiff alleges violations of his First and Eighth Amendment rights.  (*Id.* ¶ 26.)  He seeks declaratory and injunctive relief, as well as damages.  (*Id.* ¶¶ 28-34.)

### B.   Summary of the Department of Corrections ("DOC")'s Response to COVID-19

The DOC has provided publicly available information regarding its response to the COVID-19 pandemic.  *See COVID-19 and the DOC*, https://www.cor.pa.gov/PAges/COVID-19.aspx (last accessed June 7, 2021 12:38 p.m.).  In-person visitation has been suspended since March 13, 2020. *See id.*  "All new inmates are being screened before being admitted into prison," and the DOC is not accepting inmates with flu-like symptoms from county institutions. *See id.*  The DOC has provided inmates with disposable masks and "strongly encourage[s] inmates" to use them. *See id.*  Moreover, inmates "are being provided materials to clean their cell[s] daily. Materials will be provided to them on a daily basis." *See id.*  Institutions are conducting town hall meetings with inmates "to review sanitation guidelines and COVID-19 information for awareness." *See id.*  Correctional

Industries has increased the production of anti-bacterial soap, and soap is provided free of charge to all inmates. *See id.*

With respect to staff members, all facilities conduct "enhanced screening for all individuals entering a facility. No one will be permitted to enter a facility who has a fever over 100 degrees or exhibits signs of cold or flu." *See id.* Staff are required to wear masks, and "institutions have provided each staff member with a cloth mask for use." *See id.* Daily updates are provided to all staff members, and PPE has been provided to all staff. *See id.* Employees are advised to stay home if they are sick. *See id.*

Each institution "has plans in place for quarantine if an inmate tests positive." *See id.* All gyms, barber shops, and cosmetology areas have been closed until further notice, as have the general libraries. *See id.* DOC officials have also reduced the inmate population where they can by furloughing paroled individuals from centers to home plans, maximizing parole releases, expediting the release process for anyone with a pending home plan, and reviewing inmates who are beyond their minimum sentences. *See id.*

The DOC has also begun to vaccinate inmates and staff. "Non-medical staff and inmates are in Phase 1B, with vulnerable inmates being prioritized." *See id.* All inmates will be offered the vaccine. *See id.* No one will be required to receive the vaccine, but the DOC will focus on "encouraging vaccination for those inmates in

the long-term care setting who are most vulnerable." *See id.*  As of June 7, 2021,

there are no active cases of COVID-19 among the inmates at SCI Huntingdon.  *See*

*id.*  There has been a total of 310 inmate cases at SCI Huntingdon, with fifteen (15)

deaths.  *See id.*  There is one (1) active case among staff at SCI Huntingdon, with a

total of 198 staff cases.  *See id.*

## II.    LEGAL STANDARD

### A.    Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must

accept as true all factual allegations in the complaint and all reasonable inferences

that can be drawn from them, viewed in the light most favorable to the plaintiff.  *See*

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  The Court's

inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).   Under *Twombly* and *Iqbal*,

pleading requirements have shifted to a "more heightened form of pleading."  *See*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal,

all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible.  *Id.*  The plausibility standard requires more than a mere possibility

that the defendant is liable for the alleged misconduct.   As the Supreme Court

instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).   A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B

7

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

**B.    Civil Rights Statute, 42 U.S.C. § 1983**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

8

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.   DISCUSSION

Defendants seek partial dismissal of Plaintiff's second amended complaint for the following reasons: (1) Defendants Wetzel and Kauffman lack personal involvement; (2) Plaintiff has failed to state a plausible Eighth Amendment claim concerning the response to the COVID-19 pandemic; and (3) Plaintiff has failed to state a plausible First Amendment claim.  (Doc. No. 38 at 3-4.)  The Court considers these arguments in turn below.

### A.   Personal Involvement

Defendants Wetzel and Kauffman assert that they should be dismissed from this matter for lack of personal involvement.  (Doc. No. 38 at 5-8.)  For a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the

defendant was personally involved in the act or acts that the plaintiff claims violated his rights.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Solan v. Ranck*, 326 F. App'x 97, 100 (3d Cir. 2009).

Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *See Iqbal*, 556 U.S. at 676. The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to § 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'"  *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).  With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."  *See Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Moreover, inmates do not have a constitutional right to prison grievance procedures. *See Lions v. Wetzel*, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015).  The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. *See Pressley v. Beard*, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); *Ramos v. Pa. Dep't of Corr.*, No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate plaintiff's grievance does not state a constitutional claim), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *Rode*, 845 F.2d at 1207 (concluding that where a defendant, after being informed of

11

the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action).

The Court agrees with Defendants that Plaintiff has failed to set forth plausible supervisory liability claims against Defendants Wetzel and Kauffman.  Plaintiff fails to allege facts suggesting that Defendant Kauffman personally witnessed staff members not wearing face masks and condoned or acquiesced in this behavior. Likewise, there are no facts suggesting that Defendant Kauffman directed staff members to not wear face masks.  Finally, there are no facts suggesting that Defendants Wetzel and Kauffman personally witnessed other alleged constitutional violations and condoned or directed such alleged violations.  While supervisors cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervisor or discipline so as to prevent such conduct." *See Chinchello v. Fenton*, 805 F.2 126, 133 (3d Cir. 1986).  Moreover, while Plaintiff suggests that Defendants Wetzel and Kauffman promulgated policies that created a risk of constitutional injury, there are no facts in the second amended complaint plausibly suggesting that Defendants Wetzel and Kauffman were aware that such policies created unreasonable risk and were indifferent to those risks.  *See Merring*,

558 F. Supp. 2d at 547 (citing *Sample*, 885 F.2d at 1118).  The Court, therefore, will dismiss Plaintiff's claims against Defendants Wetzel and Kauffman.

**B.    First Amendment Claim**

The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom.  *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972); *see also Estate of O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion.")  However, in order to state a plausible claim, a plaintiff must allege a "substantial burden" on the exercise.  *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981).    Moreover, while inmates retain certain protections, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Estate of O'Lone*, 482 U.S. at 348 (quotations omitted).

In his second amended complaint, Plaintiff again alleges that the restrictions on in-person congregation worship, imposed in response to the COVID-19 pandemic, violate his First Amendment rights.  Plaintiff asserts that as a Muslim, he is obligated to participate in congregation prayers on Fridays.  (Doc. No. 36 ¶ 12.) The Court, however, notes the "highly contagious and potentially dangerous nature of COVID-19."  *See Barasky v. Shoemaker*, No. 1:20-cv-2457, 2021 WL 2255002,

at *4 (M.D. Pa. June 3, 2021) (quoting *Pape v. Cook*, No. 3:20-cv-1324, 2021 WL 2186427, at *6 (D. Conn. May 28, 2021).   Given such nature, Plaintiff has not alleged sufficient facts to raise an inference that the restrictions imposed on in-person religious services in response to the COVID-19 pandemic were unreasonably related to a legitimate goal of protecting the safety and health of inmates and staff members alike.   *Cf. id.* (concluding the same regarding the inmate-plaintiff's claim that his First Amendment rights were violated by the cancellation of visitation during the COVID-19 pandemic).   The Court, therefore, will grant the partial motion to dismiss with respect to Plaintiff's First Amendment claim.

## C.   Eighth Amendment Claim Regarding COVID-19 Restrictions

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015).   "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).   Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." *See id.* at 347.   Such necessities include "adequate food, clothing, shelter, and medical

14

care."  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).   Thus, "extreme deprivations are required to make out a conditions-of-confinement claim."  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).   However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise."  *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304 and *Rhodes*, 452 U.S. at 347).

In the instant case, Defendants again do not dispute that the COVID-19 pandemic constitutes a substantial risk of harm to inmates.  (Doc. No. 38 at 13); *see also Dixon v. United States*, No. 20-5994, 2020 WL 3249231, at *3 (D.N.J. June 16, 2020) (concluding that the inmate-plaintiff could meet the objective prong of an Eighth Amendment claim "because COVID-19 is a very contagious virus that can cause serious health complications or death in vulnerable people").   The Court, however, agrees with Defendants that Plaintiff has again failed to allege facts suggesting that Defendants demonstrated deliberate indifference to the risk posed by COVID-19.   As noted *supra*, the DOC has adopted detailed preventative steps to mitigate the risk to inmates and staff and to control the spread of COVID-19 through the state correctional institutions.   The Court may take judicial notice of this information, as it is publicly available on a governmental website.  *See Vanderklok*

15

*v. United States*, 868 F.3d 189, 205 (3d Cir. 2017).  "A review of these steps suggests that DOC officials, including Defendants, have not acted unreasonably with respect to the threat posed by COVID-19 and instead have instituted measures to safeguard the entire inmate population, including Plaintiff."  *Bevins v. Kauffman*, No. 1:20-cv-2012, 2021 WL 322168, at *5 (M.D. Pa. Feb. 1, 2021).

Plaintiff maintains that the restrictions imposed on recreation and access to the exercise yard were "overzealous" and violated the Eighth Amendment.  (Doc. No. 36 ¶¶ 12-13, 22.)  Plaintiff avers that these restrictions caused a "significant weight increase that brought on obesity and borderline diabetes." (*Id.* ¶ 12.)  While the Court is cognizant of Plaintiff's concerns, "[e]ven minimal provision of time for exercise and recreation may satisfy constitutional requirements."  *Gattis v. Phelps*, 344 F. App'x 801, 805 (3d Cir. 2009) (determining that the prisoner was not guaranteed outdoor exercise at all times and that the limitation of exercise to three (3) days per week was insufficiently serious to implicate the Eighth Amendment). Plaintiff's second amended complaint, however, fails to allege facts regarding how often he has been afforded the opportunity for recreation.  Moreover, Plaintiff fails to allege that he was denied opportunity for all exercise.  Furthermore, Plaintiff fails to allege facts suggesting that Defendants knew of a risk of harm to Plaintiff's health when they imposed the restrictions and were deliberately indifferent to such risk.

While the Court understands Plaintiff's legitimate concerns regarding the COVID-19 pandemic, it agrees with the numerous courts throughout the nation that have concluded that similar allegations do not support a plausible inference that officials have demonstrated deliberate indifference to inmates' Eighth Amendment rights.  *See, e.g., Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) (granting defendants' motion to stay the district court's grant of a preliminary injunction on the basis that, *inter alia*, the plaintiffs had not demonstrated that defendants were deliberately indifferent to the risk posed by COVID-19 because the correctional facility had "implemented many measures to curb the spread of the virus"); *Bevins*, 2021 WL 322168, at *5; *Wylie v. Bonner*, No. 2:20-cv-2593-TLP-tmp, 2021 WL 261280, at *4-6 (W.D. Tenn. Jan. 26, 2021) (finding that inmate-plaintiff had failed to state an Eighth Amendment conditions of confinement claim because he failed to allege that staff knew of and disregarded the risks posed by COVID-19); *Shokr v. LeBlanc*, No. 20-488, 2020 WL 8093228, at * (M.D. La. Dec. 14, 2020) (concluding that the inmate-plaintiff had failed to state a plausible Eighth Amendment claim because measures were being taken to combat the COVID-19 virus); *Kesling v. Tewalt*, 476 F. Supp. 3d 1077, 1086-88 (D. Idaho 2020) (concluding that inmate-plaintiff's amended complaint failed to set forth a plausible Eighth Amendment claim when prison officials had developed and instituted policies to curb the spread of COVID-19); *McKissic v. Barr*, No. 1:20-cv-526, 2020 WL 3496432, at *6 (W.D.

17

Mich. June 29, 2020) (concluding that inmate-plaintiff failed to state an Eighth Amendment claim where defendants had taken "significant measures . . . to secure prisoner safety and prevent infection" and the plaintiff's "speculation about the mere possibility that he will become infected does not rise to the level of an Eighth Amendment violation").   Indeed, "the Eighth Amendment does not require perfection on the part of prison officials." *See Wylie*, 2021 WL 261280, at \*6.  From Plaintiff's amended complaint, as pled, the Court "cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, [Defendants] here acted unreasonably by 'doing their best.'" *See Swain v. Junior*, 961 F.3d 1276, 1289 (11th Cir. 2020).  The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's claims concerning the lack of recreation, as well as his claims concerning their alleged inadequate response to the COVID-19 pandemic.[1]

### D.   Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

---

[1] Plaintiff again alleges that in July of 2020, he was placed in a Plexiglas cell "with no ventilation or a fan with extreme heat and humidity."  (Doc. No. 36 ¶ 20.)  He claims that the "cell was like being locked in a hot car with the windows up in the summer."  (*Id.*)  However, Plaintiff again fails to allege facts suggesting that any of the named Defendants were personally involved in Plaintiff's placement in this cell.  Accordingly, any Eighth Amendment claim based on conditions in this cell is again subject to dismissal.

The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  *Id.*  The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim.  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

Plaintiff's Eighth Amendment claim against Defendants Stuller, Brown, and Copper regarding his medical diet and his Eighth Amendment claim against Defendant Loy regarding the disruption of his sleep by the fog machine previously survived dismissal.  Based on the foregoing discussion, it would be futile to grant Plaintiff leave to file a third amended complaint with respect to his remaining § 1983 claims against Defendants.  Plaintiff did not allege plausible claims for relief, and "he has already had [more than] two chances to tell his story."  *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019).  Accordingly, "giving him further leave to amend would be futile."  *Id.*  The above-captioned

action, therefore, will proceed only as to Plaintiff's Eighth Amendment claims against Defendants Stuller, Brown, Copper, and Loy.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' partial motion to dismiss. (Doc. No. 37.) All of Plaintiff's claims, except for his Eighth Amendment claims against Defendants Stuller, Brown, Copper, and Loy, will be dismissed. Plaintiff will not be permitted to file a third amended complaint in this matter. An appropriate Order follows.


s/ Sylvia H. Rambo
United States District Judge

Dated: June 10, 2021